J-S07027-17
J-S07028-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INT. OF: A.S., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: O.S., FATHER | No. 1646 MDA 2016 |

Appeal from the Order Entered September 7, 2016
In the Court of Common Pleas of York County
Juvenile Division at No(s): CP-67-DP-0000157-2010

*****

| | |
|---|---|
| IN THE INT. OF: A.S., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: L.S., MOTHER | No. 1652 MDA 2016 |

Appeal from the Order Entered September 7, 2016
In the Court of Common Pleas of York County
Juvenile Division at No(s): CP-67-DP-0000157-2010

BEFORE:  BOWES, J., LAZARUS, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED FEBRUARY 10, 2017**

O.S. (Father) and L.S. (Mother) appeal[1] from the trial court's order changing the primary goal from reunification to adoption for the parties' minor son, A.S. (born 11/09).  After careful review, we affirm.

_____

[1] We have *sua sponte* consolidated Father's and Mother's appeals as they are taken from the same goal-change order and each raise a similar issue. *See* Pa.R.A.P. 513.

A.S. is an insulin-dependent juvenile diabetic. In November 2010, York County Office of Children, Youth and Families (CYF) received a referral regarding A.S. due to allegations of environmental and medical neglect. After several hearings, the court permitted A.S. to remain in Parents' custody since they were cooperating with CYF and accepting ongoing services to remedy the situation; juvenile court jurisdiction was terminated in 2013.[2]

On November 5, 2015, CYF received another referral regarding A.S. due to concerns about Mother and Father's ability to properly attend to A.S.'s medical condition as well as concerns regarding the safety (exposed wiring) and cleanliness (excessive cat and dog urine and animal feces on floors and carpets) of the family home. On January 20, 2016, CYF filed a dependency petition alleging that A.S. "is without proper parental care or control." 42 Pa.C.S. § 6302. On January 22, 2016, CYF filed an emergency protective custody application and A.S. was removed from Mother and Father's care and placed in temporary foster care. On April 7, 2016, following two days of hearings, A.S. was adjudicated dependent and physical and legal custody was awarded to CYF; A.S. remained in foster care. The court-ordered goal was set at reunification, with a projected date to achieve

_____

[2] On July 8, 2011, CYF filed a dependency petition. However, CYF later withdrew that petition when Parents began cooperating with early intervention services and attending parenting support groups in an effort to remedy the conditions that led to the referral.

the goal established at 6-12 months. In December 2015, February 2016, and June 2016, CYF prepared three family service plans (FSP) for Mother and Father, setting forth the following objectives: attend mental health therapy, significantly improve conditions of the home, work with an in-home team, obtain psychological evaluations, and continue to attend nutritional classes to understand A.S.'s significant medical needs. Justice Works, a social services organization, was assigned to assist the family to achieve their goals.

On June 8, 2016, the court held a combined placement review and dispositional review hearing. *See* 42 Pa.C.S. § 6351(e). After the hearing, the court entered a permanency review order indicating that A.S.'s placement continues to be necessary, that Mother and Father have minimally complied with the permanency plan, that CYF continues to provide the family ongoing services, and that A.S. is thriving in foster care. Most notably, the order notes that Mother and Father have made "minimal progress toward alleviating the circumstances which necessitated the original placement." Permanency Review Order, 6/8/16, at 2. CYF's report to the court also indicates that it had concerns regarding A.S.'s health, that he appeared to be malnourished and that his diabetes was not being treated appropriately. Report to the Court for Permanency Review Hearing, 6/6/16, at ¶ 2(i). Parents continued to have weekly, supervised visits with A.S.

On September 7, 2016, the court held a 90-day status review hearing. At the hearing, a CYF worker testified that there were still environmental

concerns regarding Mother and Father's home. With regard to Father, testimony revealed that while he attends A.S.'s medical appointments, he provides A.S. with improper food for his medical condition, which caused A.S.'s blood sugar to spike to a dangerously high level[3] on one occasion. Moreover, Father has failed to obtain mental health treatment as recommended by CYF. CYF reported that Mother has been cooperative with JusticeWorks, maintains her mental health appointments, attends all of A.S.'s medical appointments, and keeps records of A.S.'s food intake and insulin doses. Overall, CYF noted Mother's progress as "moderate." At the conclusion of the hearing, CYF recommended ongoing foster care placement for A.S. and the court changed the goal to adoption, with a concurrent goal of reunification. In justifying its goal change, the court stated:

> Well, we're going to go a little further than that. We're going to change the goal. And we are going to change the goal to adoption. And secondarily, or the concurrent goal will be reunification.
>
> I want to make it very clear that even though we are changing the goal to adoption that it very well could be totally proper to reunify [A.S.] with his mother if his mother and father were not living together.

---

[3] A JusticeWorks employee who provided services to the family testified that A.S.'s blood sugar level peaked to 419-420. N.T. Status Review Hearing, 9/7/16, at 28. For a six-year-old, the preferred range for a fasting blood sugar level is 80-90; a range of 120-140 is preferred two hours after a meal. *See* http://www.diabetesaction.org.

I know Justice Works has tried to work with [M]other on separating and so forth. And if she can't do that, I feel very much for her. But I have to look out for [A.S.].

And candidly, the diabetic problem or the environmental problems, either one would cause me to have the goal changed to adoption, but two of them together, and [F]ather's lack of cooperation on mental health treatment is a nice – not a nice – it's an unfortunate postscript to that.

But the two of them together, even though we are not to the 15 months, if I'm counting right, we are at seven months in placement but ten months of services. It's time to change direction.

[Mother and Father], [c]ounsel can advise you but I can tell you in open court that does not necessarily mean your rights will be terminated. That requires a Petition to Terminate Parental Rights and a hearing. So there is still time to – if you'll excuse the expression – clean up our act.

I did warn you when we were here three months ago. I have it in my notes. I warned you that this could happen, and unfortunately not only was progress not made, but several steps backwards is what has happened since the last hearing. I'm extremely concerned about the hoarding getting worse and more things going into the home instead of leaving the home. More clutter instead of less. That's completely the wrong trend.

You were warned about the cats and the dogs and the urine last time. Now, apparently it's as bad if not worse. I hear the carpets would probably have to be replaced to take care of the urine smell. You've not only not made progress in the last three months, you've gone backwards. So you've left me no choice but to change the goal to adoption.

N.T. Status Review Hearing, 9/7/16, at 41-43. The court entered its order changing the goal to adoption; this timely appeal follows.

On appeal, Father and Mother present the same issue for our consideration: Whether the trial court erred in changing the court-ordered goal in that the change of goal is not in the child's best interest and is

- 5 -

against the sufficiency and weight of the evidence where parents were not provided sufficient time to effectuate reunification.

On appeal, Father presents the following issue for our consideration: Whether the court abused its discretion in ordering a change of goal to adoption because the change was made *sua sponte* at a 90-day status conference without notice of a consideration of change of goal given to any party?

Our standard of review of a goal change is as follows:

When we review a trial court's order to change the placement goal for a dependent child to adoption, our standard is abuse of discretion. In order to conclude that the trial court abused its discretion, we must determine that the court's judgment was manifestly unreasonable, that the court did not apply the law, or that the court's action was a result of partiality, prejudice, bias or ill will, as shown by the record. The trial court, not the appellate court, is charged with the responsibilities of evaluating credibility of the witnesses and resolving any conflicts in the testimony. In carrying out these responsibilities, the trial court is free to believe all, part, or none of the evidence. When the trial court's findings are supported by competent evidence of record, we will affirm even if the record could also support an opposite result.

*In the Interest of S.G.*, 922 A.2d 943, 946-47 (Pa. Super. 2007) (citations and quotations omitted). We also recognize that in matters of placement for a dependent child, the trial court must be guided by the best interests of the child – not those of his or her parents. *In re N.C.*, 909 A.2d 818, 823 (Pa. Super. 2006).

Placement of and custody issues pertaining to dependent children are controlled by the Juvenile Act, which was amended in 1998 to conform to the federal Adoption and Safe Families Act

- 6 -

("ASFA"). The policy underlying these statutes is to prevent children from languishing indefinitely in foster care, with its inherent lack of permanency, normalcy, and long-term parental commitment. Consistent with this underlying policy, the 1998 amendments to the Juvenile Act, as required by the ASFA, place the focus of dependency proceedings, including change of goal proceedings, on the child. Safety, permanency, and well-being of the child must take precedence over all other considerations, including the rights of the parents.

*    *    *

When the child welfare agency has made reasonable efforts to return a foster child to his or her biological parent, but those efforts have failed, then the agency must redirect its efforts towards placing the child in an adoptive home. This Court has held that the placement process should be completed within 18 months.

*    *    *

While this 18-month time frame may in some circumstances seem short, it is based on the policy that a child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.

*Id.* at 823-24 (citations and quotations omitted; footnotes and emphasis in original).

Mother asserts that the court improperly changed the goal to adoption where she was making "moderate progress towards achieving her goals" and she "was cooperative with in-home services, maintains her mental health appointments[,] attends all [of A.S.'s] appointments [and] keeps records in [a] designated notebook of [A.S.'s] food intake and insulin doses." Mother's Brief, at 10. We do not doubt that Mother has been cooperative with Justice Works' caseworkers, is working toward achieving her service goals, and is open to recommended changes to better A.S.'s home environment.

- 7 -

However, this does not change the reality that Mother's positive efforts are constantly thwarted by Father and that Mother's acquiescence to Father is not in the best interest of A.S.

As we have stated, in matters of placement for a dependent child, the trial court must be guided by the best interests *of the child--not those of his or her parents*. **In re S.G.**, **supra**. Moreover, while Mother argues that she was never given the opportunity to separate herself from Father, she is an adult and has a parental obligation to pursue A.S.'s best interests. Although the court and CYF may not have originally suggested that she leave Father, the simple fact remains that she and Father have not been able to effectively and permanently meet and maintain the goals established for them since A.S. was adjudicated dependent. **See In re N.C.**, **supra** (goal change may be necessary when parents have not advanced themselves to point of discharging parental duties and obligations because "a child's life simply cannot be put on hold in the hope that a parent will summon the ability to handle the responsibilities of parenting.") (quoting **In re Adoption of M.E.P.**, 825 A.2d 1266, 1276 (Pa. Super. 2003)). Accordingly, we find no merit to her issue on appeal.

Likewise, Father asserts that the court erred in changing the goal to adoption where it was not in A.S.'s best interest and contrary to the weight of the evidence. A.S.'s home continues to be in deplorable condition, smelling of cat urine and dog feces strewn on the floors. A.S.'s educational, developmental and medical needs are neither being effectively addressed

nor met by Father. At the time of the status review hearing, A.S. was six years old and still wearing diapers. CYF had concerns regarding Father's ability to provide the correct insulin dosage as well as implement a nutritional program for A.S.'s diabetes. Most alarming, however, was testimony that Father had provided A.S. food that caused his blood sugar level to spike to more than 400. Additionally, health care providers testified that they were concerned Mother and Father may not be able to address A.S.'s long-term medical needs, which directly impacts A.S.'s health, well-being and safety. *See In re N.C.*, *supra* ("Safety, permanency, and well-being of the child must take precedence over all other considerations, including the rights of the parents."). Accordingly, we find no merit to this claim.

In Father's final issue, he contends that the formal, six-month permanency review hearing, not a 90-day status review hearing, is the appropriate time to review and change a goal in a dependency case. Father contends that compared to regular six-month permanency hearings, three-month status review hearings are less formal and a caseworker report detailing the parents' progress and FSP compliance is not required. Because the court "*sua sponte*" changed the goal at the status review hearing on September 7, 2016, Father asserts that his right to notice was violated.

Pursuant to 42 Pa.C.S. § 6351 of the Adoption Act:

(e) Permanency hearings.

(1) The court shall conduct a permanency hearing for the purpose of determining or reviewing the permanency plan of the child, the date by which the goal of permanency for the child might be achieved and whether placement continues to be best suited to the safety, protection and physical, mental and moral welfare of the child. In any permanency hearing held with respect to the child, the court shall consult with the child regarding the child's permanency plan, including the child's desired permanency goal, in a manner appropriate to the child's age and maturity. If the court does not consult personally with the child, the court shall ensure that the views of the child regarding the permanency plan have been ascertained to the fullest extent possible and communicated to the court by the guardian ad litem under section 6311 (relating to guardian ad litem for child in court proceedings) or, as appropriate to the circumstances of the case by the child's counsel, the court-appointed special advocate or other person as designated by the court.

\* \* \*

(3) The court shall conduct permanency hearings as follows:

(i) Within six months of:

(A) the date of the child's removal from the child's parent, guardian or custodian for placement under section 6324 (relating to taking into custody) or 6332 or pursuant to a transfer of temporary legal custody or other disposition under subsection (a)(2), whichever is the earliest; or

(B) each previous permanency hearing until the child is returned to the child's parent, guardian or custodian or removed from the jurisdiction of the court.

(ii) Within 30 days of:

(A) an adjudication of dependency at which the court determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and reunify the family need not be made or continue to be made;

- 10 -

(B) a permanency hearing at which the court determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and reunify the family need not be made or continue to be made and the permanency plan for the child is incomplete or inconsistent with the court's determination[.]

42 Pa.C.S. § 6351. Moreover, at each permanency hearing, the court shall determine, among other things, "[t]he appropriateness and feasibility of the current placement goal for the child." *Id.* at § 6351(f)(4).

Instantly, the court *sua sponte* changed A.S.'s primary goal from reunification to adoption at the 90-day status hearing on September 7, 2016. At that time, A.S. had been in placement for less than 8 months. While an agency typically files a petition to change a goal in a dependency proceeding, there is nothing in the Juvenile Act, case law or rules of procedure that prevents an agency from requesting a goal change sooner, nor is there law in Pennsylvania prohibiting a trial court from ordering the agency to change the permanency goal at any time if it is clear reunification is not viable.

Additionally, we do not find that Father's due process rights were violated where he was afforded notice of the dependency petition, emergency protective custody petition, shelter care hearing, several permanency hearings, regular review hearings, and was also represented by counsel at the status review hearing where he had the opportunity to present evidence and cross-examine CYF witnesses. *See in re G.P.-R.*, 851

- 11 -

A.2d 967 (Pa. Super. 2003) (where agency filed petition to terminate parental rights where placement plan remained reunification, Father's due process rights protected where he was afforded adjudication hearing, regular review hearings, hearing on his exceptions to goal change and on petition to terminate his parental rights, was represented by counsel and had opportunity to present evidence).

After careful review, we find that the trial court's decision to change A.S.'s primary goal to adoption is supported by clear and convincing evidence and that there was no abuse of the trial court's discretion. ***In the Interest of S.G.***, ***supra***.

Order affirmed.[4]

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/10/2017

---

[4] We reiterate the fact that merely because a court changes the primary goal to adoption, it does not necessarily mean that parental rights will be terminated. Here, the court changed A.S.'s goal in an effort to emphasize the urgency of A.S.'s medical condition and declining home environment and to prompt Mother and Father to be more compliant with their FSP so that they may have the goal returned to reunification.